HEARD NOVEMBER TERM, 1875.

State *vs.* McJunkin.

It is no ground of challenge, to the array of the jury, that the jury lists were prepared by a Jury Commissioner whose term of office had expired, but whose successor had not been appointed.

Where an officer continues in the exercise of the duties of the office after his term of office has expired, he is an officer *de facto*, and the validity of his official acts cannot be questioned collaterally.

BEFORE COOKE, J., AT PICKENS, MARCH TERM, 1875.

Indictment against Dyer McJunkin for murder, committed in November, 1874.

It was shown, on behalf of the prisoner, that the jury lists from which the jurors for the present term of the Court were drawn were prepared on the 26th January, 1875, by W. A. Lesley, acting as Jury Commissioner for the County of Pickens, assisted by the County Auditor and the Chairman of the Board of County Commissioners; that Mr. Lesley was first appointed to the office of Jury Commissioner, and qualified on the 10th January, 1873; that his term of office expired on the 10th January, 1875; that he was reappointed and recommissioned Jury Commissioner on the 13th February, 1875, and that the venire for drawing the jurors was issued before, and the jurors drawn after, his reappointment. A challenge to the array was then submitted by the prisoner on the ground that the jury lists were illegal because Mr. Lesley was not the Jury Commissioner of the County at the time they were prepared; and it was also objected, on his behalf, that the venire issued to the Jury Commissioner by the Clerk was also illegal and void on the same ground. The challenge to the array was overruled, and the venire held to be valid.

The prisoner was put upon trial and found guilty. He then moved in arrest of judgment on the same grounds above mentioned, and he also moved for a new trial. His motions were denied, and, after sentence passed, he appealed to this Court.

*Keith*, for appellant.

*Blythe*, Solicitor, contra.

February 18, 1876. The opinion of the Court was delivered by

MOSES, C. J. We have accorded to this case full and deliberate consideration, not because of the difficulty of the legal proposition on which the appellant relies, but of the serious consequences which its decision involves.

While it is not to be disputed that all the features which give to the jury system its symmetry and beauty must be preserved, and that its value as a protecting shield to the citizen shall not be impaired by weakening any of the elements which have contributed to its effect as an institution prized by the people as their best

medium of security against personal and political wrongs, yet Courts are not at liberty to disregard the principles which are applicable to its practical administration.

The single question made involves the validity of the acts of the Jury Commissioner who participated in drawing the juries. It is claimed that Mr. Lesley, who acted with the County Auditor and the Chairman of the County Commissioners for Pickens County, was not at the time Jury Commissioner for the said County; that, therefore, the Board of Jury Commissioners, which, by the first Section of Chapter 141 of the General Statutes, is to consist of the said three officers, was not properly constituted at the time of the drawing both of the grand and petit jurors summoned to the term of the Court at which the bill was found and the prisoner tried, and that, consequently, the challenge to the array should have prevailed. By the Chapter and Section already referred to, the Jury Commissioner is to be appointed by the Governor and confirmed by the Senate. Lesley had been such Commissioner for two years previous to the drawing of the said juries. His first term expired on 10th January, 1875, and he was not recommissioned until 11th February of the same year. When he was reappointed did not appear, though he continued to act during the intervening space of thirty-one days within which the juries were drawn.

The duties of the Jury Commissioner are entirely of a ministerial character. They are defined and prescribed by statutory regulations, and involve no exercise of right beyond that which is comprehended within the specific powers conferred. The title to the office is not brought into question by any direct proceeding to that end, but it is sought to affect it in a collateral way, and not through an issue by the only process under which his right to hold and enjoy it could be determined. Neither is his original appointment to and induction into the office denied, or his continuance in the exercise of its duties. He was recognized as such Commissioner by the Sheriff of the County, who, by virtue of the eleventh Section of the forty-first Chapter of the General Statutes, is to deliver the venire issued by the Clerk, and also by the Board of Commissioners, on the members of which the Sheriff is required to serve it. He was acknowledged and accepted by the Board as one of its duly-constituted and acting members, and, to all intents and purposes, occupied the position, if not of an officer *de jure*, certainly of one *de facto*. The acts of such an officer during his continuance of their

exercise have all the validity and binding efficacy of one holding his place by evidence of title above question or examination in a collateral way. This principle has been frequently recognized in our Courts, as may be seen by reference to *Taylor* vs. *Skrine*, (2 Cons. Rep., 696,) *State* vs. *Hill*, (2 Speer, 160,) *Kottman* vs. *Ayer*, (3 Strob., 93,) *State* vs. *Mayberry*, (3 Strob., 146,) *McBee* vs. *Hoke*, (2 Speer, 145.) In the last case, O'Neall, J., delivering the opinion of the Court, said: "But I take the broad ground that, being found in an office of which he had been the incumbent for many years, the plaintiffs had the right to regard him as the Coroner, and his acts for them are good. * * * * One in office and transacting its duties is supposed to be rightfully there, and, so far as third persons are concerned, that presumption legalized his acts. Such a position is necessary to prevent the interminable difficulties in which we should be involved if it were otherwise." The rule, as it prevailed at common law, is laid down in Bacon's Ab., title "Office and Officers," and in 16 Viner's Ab., 114. It proceeds upon the principle "that one entering office under color of election or appointment is an officer *de facto*, and his acts in relation to the public or third persons are valid until he is removed, although it be conceded that his election or appointment was illegal." The English cases have followed the rule, and it was fully recognized by the Judges in *Hopley* vs. *Young*, (8 A. and E., 63,) and *Bowley* vs. *Barnes*, (*Ib.*, 1037.) The authorities in New York, Massachusetts, Connecticut, and, we might also say, in the most, if not all, of the States of the Union, are to the same effect. This Court, in *Palmer* vs. *Railroad*, (3 S. C., 591,) said: "The existence and authority of the office are not questioned, but the title of the incumbent is the only matter in dispute. The validity of the array does not depend on the title of the Jury Commissioner to his office. While actually exercising the power of the office, his official acts must have full force and effect."

A very different question would arise, as was said by Sutherland, J., in *Wilcox* vs. *Smith*, (5 Wend., 235,) referring to the case of *Rex* vs. *Vivelet*, (3 Comp., 432,) in the following language: "When the act of the officer was made the foundation of a criminal proceeding, instead of being used as a defense or protection, and it may well be that a strict legal title to the office, under such circumstances, may be inquired into."

In the case before us there is no charge of bias or prejudice on

the part of the Board, or on any member in discharge of the duty imposed by the jury law, and no unfairness charged in its exercise. The ground interposed is not sufficient either to arrest the judgment or for a new trial, and the motion must be dismissed. It is accordingly so ordered.

*Wright,* A. J., and *Willard,* A. J., concurred.